UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

NASHAY BLACK,

      Plaintiff,

   -against-

7714 ENTERTAINMENT, CORP. d/b/a
CLUB VANITY GENTLEMEN'S CLUB
and JOHN DOES 1–3

      Defendants.

-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21-CV-4829 (MKB) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

  Plaintiff Nashay Black initiated this action against Defendants 7714

Entertainment, Corp. ("Club Vanity") and John Does 1–3 ("Defendants") on August 26,

2021. (Complaint ("Compl."), ECF No. 1.) Plaintiff alleges various claims, including

violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b) *et seq.* ("FLSA") and the

New York Labor Law ("NYLL"), Art. 6 § 190 *et seq.*

  On January 11, 2022, the Clerk of Court certified the default of Club Vanity for

failing to plead or otherwise defend this action pursuant to Rule 55(a) of the Federal

Rules of Civil Procedure.[1] (Clerk's Entry of Default, ECF No. 11.) Plaintiff moved for a

---

[1] The Court notes that Plaintiff has not filed proof of service of John Does 1–3 (bouncers at Club Vanity), the Clerk of Court has not certified the default of John Does 1–3, and Plaintiff has not moved for default against John Does 1–3. (Complaint ("Compl."), ECF No. 1, ¶ 16.) Additionally, Plaintiff herself notes:

> Plaintiff also brought assault and battery claims against several Club Vanity bouncers, but she does not know their names and is, therefore, unable to secure a default judgment against them at this time.

(Mem. in Supp., ECF No. 13, at 1 n.1.) Therefore, the Court refrains from addressing Plaintiff's assault and battery claims against John Does 1–3. (*See* Compl., ECF No. 1, ¶¶ 4, 78–87.) The Court further recommends that the claims against John Does 1–3 be dismissed without prejudice since these individuals have not been identified or served. *See CIT Bank, N.A. v. Paganos*, No. 14-CV-3987 (CBA) (VMS), 2015 WL 13731361, at *3 n.6 (E.D.N.Y. Sept. 25, 2015)

default judgment against Club Vanity on January 14, 2022. (*See* Mot. for Default J., ECF No. 12.) On January 20, 2022, Plaintiff's motion for a default judgment was referred to the undersigned Magistrate Judge. (Jan. 20, 2022 ECF Referral Order.) For the reasons set forth below, this Court recommends that Plaintiff's motion for a default judgment be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that Club Vanity employed her as an entertainer at its gentlemen's club from December 2019 to March 2020 and from June 2021 to July 10, 2021. (Compl., ECF No. 1, ¶¶ 1, 13–14; Pl.'s Decl. in Supp., ECF No. 15, ¶¶ 1–2 (clarifying that Plaintiff worked at Club Vanity from December 2019 to March 2020 and from June 2021 to July 10, 2021).) Plaintiff claims that during this time period, she regularly worked nine hours a day for three days per week, totaling twenty-seven hours per week, without a meal break, except for once a month, when she worked from 9:00 p.m. to 4:00 a.m., for a seven-hour shift. (Compl., ECF No. 1, ¶¶ 21–22.) Plaintiff alleges that Club Vanity "failed to pay [Plaintiff] *any* wages during her employment." (*Id.* ¶ 23.) Plaintiff notes that she "regularly received tips from customers" but that "Club Vanity retained half of the tips [she] received while working in Club Vanity's private rooms." (*Id.* ¶¶ 24–25.) Plaintiff contends that Club Vanity required her to pay a house fee in advance of each shift she worked, which differed on weekdays and weekends. (*Id.* ¶ 26.) Plaintiff further alleges that for weekdays, Club Vanity required

(dismissing plaintiff's claims as to John Doe instead of ordering a default judgment against John Doe because the Clerk of Court did not enter default against John Doe (despite plaintiff's request), plaintiff did not take further action to identify John Doe, and "Plaintiff did not take any action to obtain an entry of default against John Doe after Plaintiff's initial request was denied"); *see also United States v. Callard*, No. 11-CV-4819 (ADS) (ETB), 2013 WL 6173798, at *4 (E.D.N.Y. Nov. 9, 2013) (finding that plaintiff failed to "point[] to any legal authority establishing that the Clerk of Court may note the default of parties that are fictitious").

her to pay "$40 if she arrived at work at 7:00 p.m.; $50 if she arrived at 8:00 p.m.; or $70 if she arrived at 9:00 p.m." (*Id.* ¶ 27.) According to Plaintiff, for weekends, Club Vanity required her to pay "$55 if she arrived at work at 7:00 p.m.; $65 if she arrived at 8:00 p.m.; and $85 if she arrived at 9:00 p.m." (*Id.* ¶ 28.) Plaintiff alleges that she "was closely and strictly supervised by her manager Norman (last name unknown) and had to follow strict guidelines." (*Id.* ¶ 19.) Finally, Plaintiff contends that "Club Vanity did not pay other entertainers, like her, any wages, retained their tips, and required them to pay house fees." (*Id.* ¶ 29.)[2]

According to the complaint, Club Vanity is a domestic business corporation engaged in interstate commerce and organized under the laws of the State of New York. (*Id.* ¶¶ 9, 11.) Plaintiff avers that "Club Vanity employs more than 11 employees." (*Id.* ¶ 10.) Plaintiff claims that the individual defendants named in the complaint, John Does 1–3, are "Club Vanity employees who [Plaintiff] does not know their names," whom Club Vanity employed as bouncers. (*Id.* ¶ 12, 16.) Plaintiff further alleges that on August 7, 2021, Defendants John Does 1–3 "told her that she could not work because she had been fired." (*Id.* ¶ 33.) Plaintiff contends that she:

> [T]ook out her phone and started to record the interaction with the bouncers, at which time one of the bouncers pushed her phone into her chest and told her that she could not record him. The bouncers then touched her butt and pulled out a bat — suggesting that they would hit her with it if she did not leave and stop recording them.

(*Id.*) Plaintiff contends that the next day, August 8, 2021, Plaintiff returned to Club Vanity to work and Defendants John Does 1–3 again told her that she was fired. (*Id.* ¶ 34.) According to the complaint, Defendants John Does 1–3 came into Plaintiff's

---

[2] The Court notes that Plaintiff has not moved to certify a class action or an FLSA collective action despite preliminarily indicating her intention to assert her allegations and claims on behalf of a class under Federal Rule of Civil Procedure 23 and as a collective action under the FLSA in the complaint. (*See* Compl., ECF No. 1, ¶¶ 36–44.)

dressing room, "touched her private parts, pulled out a taser and stole belongings from her bag." (*Id.*) Plaintiff alleges that: "Club Vanity knew or should have known that the bouncers assaulted [Plaintiff]." (*Id.* ¶ 35.)

Based on the allegations set forth in the complaint, Plaintiff asserts claims against Club Vanity for willfully violating the minimum wage pay provisions of the FLSA and NYLL, unlawfully retaining gratuities and wages under the FLSA and NYLL, and for violating the New York Wage Theft Prevention Act, NYLL §§ 195(1) and 195(3), by failing to provide notice of pay upon hiring and wage statements. (*Id.* ¶¶ 2–3, 45–70.) Plaintiff also brings a claim of negligent supervision against Club Vanity. (*Id.* ¶¶ 4, 71–77.) Finally, Plaintiff claims that Defendants John Does 1–3 committed assault and battery. (*Id.* ¶¶ 4, 78–87.)

Service of the summons and complaint upon Club Vanity was effected on September 16, 2021. (*See* Summons Returned Executed, ECF No. 8.) On October 12, 2021, the Court directed the parties to file a joint status report since no answer to the complaint had been filed. (Oct. 12, 2021 Status Report Order.) On November 12, 2021, Plaintiff filed a status report informing the Court that Plaintiff sent Club Vanity's General Manager "a letter informing him that [Club Vanity] is in default and requesting that its attorney promptly contact this firm." (Pl.'s Status Report, ECF No. 9.) Plaintiff's counsel also sent a message to the email address located on Club Vanity's website "again requesting that [Club Vanity's] attorney or someone from the company contact [Plaintiff's counsel's] firm." (*Id.*) Plaintiff informed the Court that as of November 12, 2021, Club Vanity had not answered or appeared in the case and no attorney for Club Vanity had contacted Plaintiff's counsel. (*Id.*) Accordingly, Plaintiff represented that she intended to move for a default judgment against Club Vanity. (*Id.*) In response to

4

Plaintiff's status report, the Court directed Plaintiff to file another status update or motion by January 14, 2022. (Nov. 15, 2021 ECF Order.)

Plaintiff filed the instant motion for a default judgment and accompanying documents on January 14, 2022. (Mot. for Default J., ECF No. 12; Mem. in Supp., ECF No. 13; Jan. 14 Lipsky Decl. in Supp., ECF No. 14; Pl.'s Decl. in Supp., ECF No. 15.) On January 20, 2022, Plaintiff's motion for a default judgment was referred to the undersigned Magistrate Judge. (Jan. 20, 2022 ECF Referral Order.) On February 17, 2022, the Court directed Plaintiff to file an affidavit or declaration establishing compliance with EDNY Local Rules 55.2(a) and 55.2(c) "and appropriate service on Defendant as to Plaintiff's request for a certificate of default [] and Plaintiff's default motion [] by March 17, 2022." (Feb. 17, 2022 ECF Order.) Also on February 17, 2022, the Court scheduled a telephonic default motion hearing for April 7, 2022, and directed that the notice be sent to two addresses associated with Club Vanity, together with a full copy of the docket sheet. (Feb. 17, 2022 ECF Scheduling Order; Notice to Defendants, ECF No. 16.)

Plaintiff certified service via USPS First Class Mail of Plaintiff's motion for default judgment, Plaintiff's request for a certificate of default, and the Clerk's entry of default on February 22, 2022, and April 7, 2022. (Decls. of Service, ECF Nos. 17 & 19.) On April 7, 2022, Defendants failed to appear for the default motion hearing. (*See* Apr. 7, 2022 ECF Minute Entry and Order.)[3]

---

[3] On June 29, 2022, Plaintiff's counsel filed a motion to withdraw and a declaration supporting their motion to withdraw. (Pl.'s Counsel's Mot. to Withdraw, ECF No. 20; Pl.'s Counsel Decl. in Supp. of Withdrawal, ECF No. 21.) The Court reserves judgment on the motion.

## DISCUSSION

### I.   Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Clerk of Court enters the default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). After a certificate of default is entered, the district court may, on a plaintiff's application, enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). The court "'may first assure itself that it has personal jurisdiction over the defendant.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (quoting *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)). In addition, the plaintiff must take several steps before the court will grant a default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2.[4]

---

[4] Having carefully reviewed all of the filings in the case, the Court notes that Plaintiff's motion papers comport with Local Rule 7.1, and that Plaintiff has established procedural compliance with Local Rules 55.1 and 55.2, which govern default judgment motions. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Request for Certificate of Default, ECF No. 10); (2) filed an affidavit demonstrating that Defendants have failed to defend the action and that the pleadings were properly served in accordance with Local Rule 55.1(b) (*see* Jan. 6, 2022 Lipsky Decl., ECF No. 10-1); and (3) certified

The court must then determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Id.* However, "a pleading's legal conclusions are not assumed to be true." *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2758272 (E.D.N.Y. May 12, 2016). Rather, "on a motion for a default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief." *Id*.

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, No. 18-CV-6476 (ARR), 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). The court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *report and recommendation adopted*, No. 10-CV-4288 (JBW), 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

---

the mailing of the motion papers to the business addresses of Club Vanity, in accordance with Local Rule 55.2(c). (Decls. of Service, ECF Nos. 17 & 19.)

## II.     Entry of Default Judgment

A threshold question before reaching liability or damages is whether Club Vanity's conduct is sufficient to warrant a default judgment being entered. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). These factors are: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Basile v. Wiggs*, No. 08-CV-7549 (CS) (GAY), 2009 WL 1561769, at *4 (S.D.N.Y. May 29, 2009) (listing factors for consideration including defaulting party's bad faith, "the possibility of prejudice to the plaintiff, the merits of the plaintiff['s] substantive claim, the sufficiency of the complaint, the sum at stake, [and] whether the default was due to excusable neglect" (quoting *Feely v. Whitman Corp.*, 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999))) (second alteration in *Wiggs*).

Because Club Vanity has not responded to the Court's summons, the Court cannot ascertain whether Club Vanity's default was willful, or what defense they might have raised. However, the Court notes that a "defense is meritorious if it is good at law so as to give the factfinder some determination to make." *American Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). This requires that there be "evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quoting *Enron Oil Corp.*, 10 F.3d at 98). Absent any response from Club Vanity, despite extensive efforts to serve and notify them of the pending

default motion, the Court weighs these factors in favor of default. The final factor is whether in the absence of a default judgment, the non-defaulting party would be prejudiced. This factor strongly weighs in favor of entry of a default judgment here because "[d]enying this motion would be prejudicial to Plaintiff [] 'as there are no additional steps available to secure relief in this Court.'" *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 124 (E.D.N.Y. 2011) (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

## III.   Liability

### A.  Liability Under the FLSA

To establish liability under the FLSA, a "'plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA.'" *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018) (quoting *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, No. 16-CV-451 (CBA) (CLP), 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated*, No. 16-CV-451 (CBA) (CLP), 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018)).

#### 1.  *Employers Subject to the FLSA*

An employer is subject to the minimum wage provision of the FLSA if either: (1) their employees are "engaged in commerce," or (2) the employer is an "enterprise engaged in commerce." 29 U.S.C. § 206; *see also Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as

"individual coverage" and "enterprise coverage," respectively. *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if it:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). The statute defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

In her complaint, Plaintiff alleges that Club Vanity is an "enterprise engaged in commerce" and thus subject to the FLSA. (Compl., ECF No. 1 ¶ 11.) Plaintiff's assertion that Club Vanity is such an enterprise is a legal conclusion and, therefore, is not automatically assumed to be true. In support of this contention, Plaintiff offers little beyond statements that match the language of the statute. (*See, e.g., id.* ("Club Vanity is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.").) More specifically, Plaintiff also alleges that: "These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, food, stereo equipment and beverages." (*Id.*)

Although Plaintiff's non-conclusory allegations are thin, "[i]n the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage." *Saucedo*, 2016 WL 8376837, at *5. Courts have noted that

"virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quoting *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 499 (5th Cir. 1975)). In addition, even "local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Id*. at 530.

In this case, Plaintiff does not specifically allege that employees handled goods that originated out of state, but this Court may safely infer that such goods and materials were used in the operation of Club Vanity's business. Indeed, in reviewing a default judgment motion, courts must "draw all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. Courts may infer that an employer is an "enterprise engaged in commerce" within the meaning of the FLSA where, based on the plaintiff's factual allegations accepted as true, "it is simply inconceivable that none of the [goods] used . . . originated outside of New York." *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009). *Cf. Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint that simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State"); *Rodriguez*, 784 F. Supp. 2d at 121 (finding that the plaintiffs' complaint fairly alleged that the defendant company was "an enterprise engaged in commerce" under the FLSA because it was "logical to infer . . . that the cleaning supplies utilized by the Plaintiffs originated outside of New York"). Similarly, given the nature of Club Vanity's business, it is reasonable to infer that the food, stereo equipment, and beverages necessary to run an entertainment club were not exclusively from New York State. Therefore, the Court

11

finds that Plaintiff's allegations are sufficient to establish that Club Vanity is subject to the FLSA.

### 2. Employees Covered by the FLSA

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Plaintiff's complaint alleges that Club Vanity employed her as an entertainer. (Compl., ECF No. 1, ¶¶ 1, 14.) Whether a worker is deemed an employee ultimately turns on the question of "'whether, as a matter of economic reality, the worker [] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'" *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y.*, Inc., 615 F. Supp. 2d 186, 192–93 (S.D.N.Y. 2009)) (alterations in *Velu*).

The Second Circuit has adopted an "economic realities" test to determine whether an individual is an employee or an independent contractor under the FLSA. *Hart v. Rick's Cabaret International, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013) ("*Hart I*"). The factors considered include:

> "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business."

*Id.* (quoting *Brock v. Superior Care, Inc.*, 940 F.2d 1054, 1058–59 (2d Cir. 1988)). No factor is dispositive — instead, the test is based on a totality of the circumstances analysis. *Id.* The ultimate question is whether the "'workers depend upon someone else's business for the opportunity to render service or are in business for themselves.'" *Id.* (quoting *Brock*, 940 F.2d at 1059). "The application of the economic realities test is inherently case-specific, turning on the totality of the relevant circumstances." *Id.* Significantly, nearly

without exception, courts that have addressed whether exotic dancers are employees under the FLSA "'have found an employment relationship and required the nightclub to pay its dancers a minimum wage.'" *Id.* (quoting *Harrell v. Diamond A Entm't, Inc.*, 992 F. Supp. 1343, 1348 (M.D. Fla.1997)). "The test under the NYLL is similar, with a focus on the 'degree of control exercised' by the employer." *Leevson v. Aqualife USA, Inc.*, 296 F. Supp. 3d 503, 515 (E.D.N.Y. 2017) (quoting *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193, 195 (2003)).

a.   The Degree of Control Exercised by Club Vanity

In this case, it could be argued that "Club Vanity presumably failed to pay Plaintiff any wages believing she was an independent contractor and not an employee." (Mem. in Supp., ECF No. 13, at 7.) However, Plaintiff alleges that she was "was not permitted to and did not use discretion or independent judgment in performing any significant duties." (Compl., ECF No. 1, ¶ 18.) Plaintiff also claims that she "was closely and strictly supervised by her manager Norman (last name unknown) and had to follow strict guidelines." (*Id.* ¶ 19.) Plaintiff further states that she was regularly directed to dance on stage and was fired for not following her manager's directions. (*Id.*) Plaintiff's manager also required her "to wear lingerie or bikinis to work as well as high heels with six-inch or greater heels." (*Id.* ¶ 20.)

Other courts have found that similar guidelines "reflect the exercise of tight control." *Hart I*, 967 F. Supp. 2d at 916; *see also Clincy v. Galardi S. Enters., Inc.*, 808 F. Supp. 2d 1326, 1344–45 (N.D. Ga. 2011) (finding that rules covering scheduling, conduct regarding dancing on stage, dress, and appearance amounted to a "significant amount of control over the entertainers"). Based on the foregoing, the Court finds that the factor of control weighs strongly in favor of finding that Plaintiff was an employee, not an independent contractor, under the FLSA.

b.   The Relative Investments of Club Vanity and Plaintiff

"The Court next considers [Plaintiff's] opportunity for profit or loss and [her] investment in the business." *Hart I*, 967 F. Supp. 2d at 919. As set forth above, Plaintiff was responsible for paying house fees, which she alleges that she did not pay for her own benefit. (Pl.'s Decl. in Supp., ECF No. 15, ¶ 10; Compl., ECF No. 1, ¶¶ 27–28.) Other than that monetary investment, the allegations in the complaint are sufficient to draw the inference that Club Vanity made all the other necessary monetary investments to operate and maintain the establishment. (*See generally* Compl., ECF No. 1.) "These facts, viewed in totality, reflect a far greater investment by [the gentlemen's club] than by the dancers." *Hart I*, 967 F. Supp. 2d at 919. This Court agrees with other courts in the Second Circuit and with the Fifth Circuit, which have found that exotic dancers are "'far more closely akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.'" *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328 (5th Cir. 1993) (quoting *Brock v. Mr. W Fireworks,* 814 F.2d 1042, 1051 (5th Cir. 1987) (referred to herein as "*Circle C.*"); *see also Hart I*, 967 F. Supp. 2d at 920.

c.   The Degree of Skill and Independent Initiative Required

Next, the Court considers whether Plaintiff "exercised the kind of initiative and skill necessary to render [her] [an] independent contractor[]." *Hart I*, 967 F. Supp. 2d at 920. While it is likely that Plaintiff undertook efforts to find customers, courts have found that such efforts are not considered "skilled work." *See id.*; *Clincy*, 808 F. Supp. 2d at 1346 n.12; *Circle C.*, 998 F.2d at 328. Additionally, there is no evidence that Club Vanity required Plaintiff to have any specific skills or training prior to employing her. Therefore, the third factor points in favor of Plaintiff being found to be an employee under the FLSA. *See Hart I*, 967 F. Supp. 2d at 920.

d.   The Permanency and Duration of the Employment Relationship

As to the fourth factor, there is no evidence, nor does Plaintiff allege, that she

worked for Club Vanity under an employment contract. There is also no evidence that

Club Vanity prevented Plaintiff from being employed elsewhere in addition to Club

Vanity. Therefore, and consistent with similar cases, the Court finds that this favor

weighs against Plaintiff being considered an employee under the FLSA, but that this

factor "is entitled to only modest weight in assessing employee status under the FLSA."

*Id.* at 921; *see also Circle C.*, 998 F.2d at 328–29.

e.   The Extent to Which Plaintiff Was "Integral" to Club Vanity

Club Vanity is "a gentlemen's lounge . . . where women dance semi-nude and

fully nude." (Compl., ECF No. 1, ¶ 13.) Additionally, at any one time, in addition to

Plaintiff, "50 entertainers are also working at Club Vanity," indicating that dancers, like

Plaintiff, were integral to the operation of the gentlemen's lounge. (Compl., ECF No. 1,

¶ 15.) Plaintiff also notes that as part of her duties, she performed on stage. (*Id.* ¶ 17.)

Therefore, the Court finds that Plaintiff has alleged sufficient facts to demonstrate that

the dancers, including her, were "integral to the success" of Club Vanity, a club for

exotic dancers. *See Hart I*, 967 F. Supp. 2d at 921; *Harrell*, 992 F. Supp. at 1352 ("Exotic

dancers are obviously essential to the success of a topless nightclub.").

Considering all five factors of the "economic realities" test in totality, the Court

finds Plaintiff's allegations sufficient to conclude that she was an employee under the

FLSA.

3.   *FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment

relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting

forth the relevant exemptions). Plaintiff has adequately pled that she was an employee

of Defendant. Accordingly, for the purposes of this default, Plaintiff has offered sufficient factual allegations to establish the threshold requirements for a claim under the FLSA against Club Vanity.

### B.  Liability Under the NYLL

To recover under the NYLL, Plaintiff must first "prove that [s]he was an 'employee,' and that Defendants were 'employer[s]' as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (citing NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2); *see also Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407, 408 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013). However, the NYLL's definition of an employer is "broader than that contained in the FLSA." *Ethelberth*, 91 F. Supp. 3d at 360. It includes "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer." NYLL § 651(6).

Based on the allegations set forth in the complaint and discussed above, Plaintiff has sufficiently pled that she was an employee of Club Vanity and that Club Vanity was an employer within the meaning of Section 190 of the NYLL. Courts in this district have found that a plaintiff who "provides information in the complaint as to where [s]he worked, h[er] position [,] and the dates of h[er] employment" has sufficiently alleged employee status in the context of a default judgment motion. *Suggs v. Crosslands Transp., Inc.*, No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 26, 2015); *see Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013).

As set forth above, Plaintiff alleges that she was employed as an entertainer at Club Vanity's gentlemen's club from December 2019 to March 2020 and from June 2021

to July 10, 2021. (Compl., ECF No. 1, ¶¶ 1, 13–14; Pl.'s Decl. in Supp., ECF No. 15, ¶¶ 1–2 (clarifying that Plaintiff worked at Club Vanity from December 2019 to March 2020 and from June 2021 to July 10, 2021).) Taking her claims as true, Plaintiff has alleged an employee relationship with Club Vanity subject to the NYLL.

### C. Violations of the FLSA and the NYLL

Having found that Plaintiff qualifies for protection under the FLSA as well as New York's labor laws, the Court must now decide whether Plaintiff is entitled to a default judgment on any of her claims for relief. As a threshold matter, the Court notes that Plaintiff filed her claims well within the statutes of limitations under federal and state law. *See* 29 U.S.C. § 255(a); NYLL § 198(3).[5]

#### 1. *Violation of the FLSA's and the NYLL's Minimum Wage Provisions*

Plaintiff alleges that Club Vanity violated the FLSA and the NYLL by failing to pay her minimum wages for hours worked. (Compl., ECF No. 1, ¶¶ 2–3, 45–56.) Accepting Plaintiff's factual allegations as true, this Court recommends finding that Club Vanity's default amounts to an admission of liability as to these claims.

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206(a); NYLL § 652. Employers that violate this provision of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an

---

[5] The FLSA generally provides for a two-year statute of limitations for enforcement of its provisions, or a three-year statute for "willful" violations. 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful' and the three-year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 09-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)). The statute of limitations under the NYLL is six years as to wage deficiency claims. NYLL §§ 198(3), 663(3). Plaintiff commenced this action on August 26, 2021, less than two years after she began working for Club Vanity. (*See* Compl., ECF No. 1, ¶¶ 1, 14.) Plaintiff's claims are entirely within the limitations periods of both the FLSA and the NYLL.

additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The federal minimum wage has been $7.25 since July 24, 2009. *See* U.S. Dep't of Labor, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2009*, https://www.dol.gov/agencies/whd/minimum-wage/history/chart (last visited July 7, 2022). The New York minimum wage for New York City businesses with eleven or more employees has been $15.00 per hour since December 31, 2018.[6] NYLL § 652(1)(a)(i).

"For purposes of determining whether Plaintiff[] [was] paid the prevailing minimum wage, the Court must determine [her] regular hourly rate of pay." *Perez Campos v. Quentin Mkt. Corp.*, No. 16-CV-05303 (DLI) (RER), 2018 WL 9945754, at *4 (E.D.N.Y. Oct. 17, 2018). Here, Plaintiff's complaint alleges that her regular hourly rate of pay was zero dollars. Plaintiff claims that while working for Club Vanity, she regularly worked three days per week, for a total of twenty-seven hours per week, except that once a month she worked from 9:00 p.m. to 4:00 a.m., for a seven-hour shift. (Compl., ECF No. 1, ¶¶ 21–22.) Plaintiff alleges that Club Vanity "failed to pay [Plaintiff] *any* wages during her employment," (*id.* ¶ 23), and that Club Vanity thus knowingly and intentionally failed to pay her the minimum wages to which she was entitled. (*Id.* ¶¶ 48, 56.) Based on the foregoing analysis concluding that Plaintiff has sufficiently alleged employee status under the FLSA and the NYLL, the Court further finds that Plaintiff's allegation that she received no hourly pay sufficient to establish that Club Vanity failed to pay her the minimum wages required under those laws.

---

[6] Plaintiff alleges that Club Vanity employs more than eleven employees. (Compl., ECF No. 1, ¶ 10.)

### 2. *Violation of the FLSA's and the NYLL's Unlawfully Retained Gratuities Provisions*

Both the FLSA and the NYLL prohibit employers from retaining any portion of tips their employees receive. *See* 29 U.S.C. § 203(m)(2)(B); NYLL § 196-d. "Under Department of Labor ('DOL') regulations, a 'tip' for the purposes of the FLSA is 'a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.'" *Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 388 (S.D.N.Y. 2013) (quoting 29 C.F.R. § 531.52). The case law in New York requires "a holistic assessment of how a reasonable customer would understand, in context, a particular surcharge, and whether it is 'purported to be a gratuity.'" *Id.* at 389 (collecting cases).

Plaintiff alleges that Club Vanity "retained half of the tips Plaintiff [] received while working in Club Vanity's private rooms." (Compl., ECF No. 1, ¶ 25.) According to Plaintiff, she, "on average, earned $1,200.00 in tips per week from working in private rooms." (Pl.'s Decl. in Supp., ECF No. 15, ¶ 9.) Accepting Plaintiff's factual allegations as true in this default context, the Court finds that Plaintiff has sufficiently demonstrated that Club Vanity violated the FLSA's and the NYLL's unlawfully retained gratuities provisions.

### 3. *Unlawful Deductions Under the NYLL*

The NYLL prohibits employers from deducting any part of their employees' wages unless the deduction is expressly authorized by the employees in writing and for their own benefit. *See* NYLL § 193. Here, Plaintiff claims that the house fees she was required to pay constituted such deductions notwithstanding the fact that she was not paid any wages. (*See* Compl., ECF No. 1, ¶¶ 26–28, 67–70; Mem. in Supp., ECF No. 13, at 1, 8–9, 17, 18–19.)

19

In the context of another case challenging a gentlemen's club's requirement that dancers pay tips to management and other employees, the court in *Hart I* observed that, "[t]he NYLL and regulations thereunder authorize only discrete types of deductions from pay, such as for Social Security and income tax, or such deductions as authorized by the employee for the benefit of the employee." *Hart I*, 967 F. Supp. 2d at 935. In a subsequent opinion in *Hart*, the court further explored the question of whether an employee has to first be paid wages in order to be compensated for deductions alleged to be unlawful under the NYLL. *See Hart v. Rick's Cabaret International, Inc.*, No. 09-CV-3043 (PAE), 2013 WL 11272536, at *7 (S.D.N.Y. Nov. 18, 2013) ("*Hart II*"). Answering that question in the negative, the court found that the tips the dancers were required to pay to other workers were unlawful deductions under § 193(3)(a) of the NYLL, which prohibits employers from requiring "'an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages' under [NYLL] § 193(1)." *Id.* (quoting NYLL § 193(3)(a)). *But see Xuedan Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 105784, at *2 (S.D.N.Y. Jan. 9, 2013) (finding that the NYLL only prohibits a payment "as a deduction from wages" (quoting NYLL § 193(3)(a))).

In a subsequent case, also involving an unpaid dancer who alleged that she had been required to pay a house fee to the club where she worked, the court found that such fees constituted unlawful deductions. *See Pichardo v. Fifty Five Long Island Corp.*, No. 20-CV-2652 (CBA) (RML), 2012 WL 4173654, at *5 (E.D.N.Y. Aug. 2, 2021), *report and recommendation adopted*, No. 20-CV-2652 (CBA) (RML), 2021 WL 4173067 (E.D.N.Y. Sept. 14, 2021). The *Pichardo* court found the *Hart II* analysis "persuasive because it draws on the statute's structure, history, and purpose rather than a rigid reading of the statutory text." *Id.* The court in *Pichardo* also found "a textualist basis for allowing plaintiff to

recover despite not receiving a wage." *Id.* The court explained that: "The disjunctive 'or' separating 'charge against wages' from 'any payment by separate transaction' indicates that the statute prohibits two distinct actions: deducting from an employee's funds through their wage and deducting from an employee's funds in any transaction other than from wages." *Id.* (quoting NYLL § 193(3)(a)). This Court agrees with the reasoning in *Pichardo* and *Hart II*, and likewise concludes that a plaintiff may recover unlawful deductions under the NYLL despite not receiving a wage when they were required to make a "payment by separate transaction" to their employer. *See* NYLL § 193(3)(a).

Here, Plaintiff alleges that Club Vanity required her to "pay a house fee in advance of each shift she worked, which varied if she was working weekdays or weekends." (Compl., ECF No. 1, ¶ 26; *see also id.* ¶¶ 27–28.) According to Plaintiff, she "did not authorize these fees and [she] did not pay the fees for [her] own benefit." (Pl.'s Decl. in Supp., ECF No. 15, ¶ 10.) The Court finds that Plaintiff has sufficiently demonstrated that Club Vanity violated the NYLL's unlawful deductions provision.

### 4. *Violation of the NYLL's Notice and Pay Stub Requirements*

Under the NYLL, employers are required to provide their employees "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." NYLL § 195(1-a). Additionally, employers must "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other." *Id.* § 195(3).

Plaintiff alleges that Club Vanity willfully failed to supply Plaintiff "with the required Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1(a) within 10 business days of their first employment date." (Compl., ECF No. 1, ¶ 62.)

Plaintiff similarly alleges that Club Vanity failed to supply Plaintiff "with an accurate wage statement with each payment of wages, violating N.Y. Lab. Law § 195.3." (*Id.* ¶ 65.) Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has sufficiently demonstrated that Club Vanity violated the NYLL wage notice and wage statement requirements.

### D. Negligent Supervision

"Under New York law, an employer can 'be held liable under the theor[y] of . . . negligent supervision.'" *Baez v. Jetblue Airways*, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S. 2d 791, 791 (2d Dep't 1997)).

> "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels."

*Stokes v. ALC of New York LLC*, No. 12-CV-7379 (KBF), 2014 WL 11485261, at *3 (S.D.N.Y. June 19, 2014) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations and quotation marks omitted)).

In turn, "[i]n order to establish a *prima facie* case of negligence under New York law, a claimant must show that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995). "To carry the burden of proving a *prima facie* case, the plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980) (citations omitted).

Plaintiff sufficiently alleges the standard elements of negligence by first claiming that she was an employee of Club Vanity, which "had a duty to supervise and prevent known risks of harm to its employees." (Compl., ECF No. 1, ¶ 72.) *See* NYLL § 200; *Russin v. Picciano & Son*, 54 N.Y.2d 311, 316–17 (1981) (discussing statutory and common law duty in New York to provide a safe workplace). Second, she alleges facts sufficient to conclude that the employer breached that duty by, apparently, delegating the task of informing Plaintiff that she had been fired to security guards who, according to Plaintiff's allegations, were armed with a bat and a taser. (Compl., ECF No. 1, ¶¶ 33–34, 72 (stating that employees "were under the supervision and control of Club Vanity").) *See Ross v. Curtis-Palmer Hydro-Electric Co.*, 81 N.Y.2d 494, 505 (1993) (finding that a plaintiff must prove that a general contractor has exercised some supervisory control over the operation to prove that they have breached their common-law duty to maintain a safe workplace).

As to the third standard element of negligence, Plaintiff adequately alleges that she suffered harm when John Does 1–3 committed assault and battery. (*See* Compl., ECF No. 1, ¶¶ 4, 72, 78–87.) In addition to the standard elements of negligence, Plaintiff states sufficient facts to establish a claim for negligent supervision. First, Plaintiff alleges that John Does 1–3 and Club Vanity were in an employment relationship. (*Id.* ¶ 16.) For the second element, Plaintiff states: "Club Vanity and/or its agents, servants or employees knew or should have known that the Club Vanity bouncers assaulted its employees, including Plaintiff Black, and/or had the capacity or propensity to do so." (*Id.* ¶ 74.) Plaintiff also alleges that on August 7, 2021, John Does 1–3 "pulled out a bat – suggesting that they would hit her with it if she did not leave and stop recording them."

(*Id.* ¶ 33.) Plaintiff further alleges that John Does 1–3 "pulled out a taser" committed assault and battery on their employer's premises.[7] (*See id.* ¶¶ 33–34, 78–87.)

It is well established that a defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound*, 973 F.2d at 158. In addition, the court must accept all of Plaintiff's "factual allegations as true and draw all reasonable inferences in [Plaintiff's] favor." *Finkel*, 577 F.3d at 84. In this case, Plaintiff provides specific facts, including the allegations that John Does 1–3 "pulled out a bat" and a taser, which indicate that these employees were prepared, and did, handle security issues at Club Vanity with violence. Drawing all reasonable inferences in Plaintiff's favor, the Court finds that she has alleged sufficient facts to establish that John Does 1–3 were employees of Defendant Club Vanity, that the club was on notice that John Does 1–3 had a propensity to commit assault and battery given the nature of their positions and the fact that they were equipped to do so, and that their assault and battery of Plaintiff occurred on the club's premises. Plaintiff has sufficiently alleged a claim of negligent supervision against Club Vanity.

## IV.   Damages

Having found that Club Vanity's default constitutes an admission of liability with respect to all of Plaintiff's claims against Club Vanity and that entry of a default

---

[7] "Under New York law, '[a]n "assault" is an intentional placing of another person in fear of imminent harmful or offensive contact. A "battery" is an intentional wrongful physical contact with another person without consent.'" *Girden v. Sandals Intern.*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993) (collecting authorities)). To plead assault, Plaintiff alleges that John Does 1–3's actions "created a reasonable apprehension in Plaintiff[] of immediate harmful or offensive conduct to her person, all of which John Does 1–3 did without her consent." (Compl., ECF No. 1, ¶ 79.) To plead battery, Plaintiff alleges that John Does 1–3 "touched Plaintiff[]'s buttocks and private parts and pushed her cell phone into her chest" and that "John Does 1–3 intentionally committed [a series of harmful and offensive comments] without Plaintiff[]'s consent." (*Id.* ¶¶ 84–85.)

judgment is warranted, the Court must now determine the appropriate damages.

Plaintiff seeks a combination of compensatory damages, liquidated damages, statutory

damages, emotional distress damages, pre- and post-judgment interest, and attorneys'

fees and costs.[8] "The plaintiff bears the burden of presenting proof of damages, which

may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions,*

*Inc.,* 2020 WL 5519200, at *3.

### A. Compensatory and Liquidated Damages

#### 1. *Applicable Law*

In determining damages not susceptible to simple mathematical calculations,

Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an

evidentiary hearing is necessary or whether to rely on detailed affidavits or

documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.*, 951 F.2d 504, 508 (2d Cir.

1991). The moving party is entitled to all reasonable inferences from the evidence it

offers. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Under the FLSA, an employee is entitled to recover "the amount of their unpaid

minimum wages" and "an additional equal amount as liquidated damages." 29 U.S.C.

§ 216(b). The employer bears the burden of establishing that liquidated damages should

not be awarded. *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997).

However, because Club Vanity has not responded and has not carried its burden,

liquidated damages are appropriate. (*See* Clerk's Entry of Default, ECF No. 11.)

A plaintiff may recover liquidated damages for unpaid wages and other

violations under either the FLSA or the NYLL, whichever provides for a greater

---

[8] In light of Plaintiff's counsel's pending motion to withdraw, the Court reserves judgment on Plaintiff's counsel's requested attorneys' fees until Plaintiff's counsel's motion to withdraw is decided by the Court. (*See* Pl.'s Counsel's Mot. to Withdraw, ECF No. 20; Pl.'s Counsel Decl. in Supp. of Withdrawal, ECF No. 21.)

recovery. *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016); *see also Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015). However, a plaintiff is not entitled to double recovery of liquidated damages. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Under the New York Labor Law, willfulness is established where an employer "'knowingly, deliberately, or voluntarily disregards its obligation to pay wages.'" *Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (quoting *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998)). This standard is not appreciably different from the FLSA standard. *Id.* Plaintiff contends that Club Vanity knowingly and intentionally failed to pay her the minimum wages to which she was entitled. (Compl., ECF No. 1, ¶ 56.) Accordingly, Plaintiff may receive a liquidated damages award under either New York law or the FLSA.

"In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (ASP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted*, No. 08-CV-6071 (SAS) (ASP), 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002); *Zhao v. East Harlem Laundromat, Inc.*, No. 07-CV-201, 2010 WL 4628294, at *6 (S.D.N.Y. Oct. 8, 2010). Accordingly, this Court has calculated the damages owed based on the representations in the complaint, Plaintiff's declaration, as well as the motion for a default judgment and the records attached. (*See generally* Compl., ECF No. 1; Pl.'s Decl. in Supp., ECF No. 15; Mot. for Default J., ECF No. 12; Mem. in Supp., ECF No. 13.) *See, e.g., Rodriguez*, 784 F. Supp. 2d at 126 (relying on similar documents).

2.   *Analysis*

As noted above, the New York minimum wage was higher than the federal minimum wage for the entire period of Plaintiff's employment. In light of the principle that "the law providing the greatest recovery will govern," Plaintiff is entitled to recovery based on the New York minimum wage. *Charvac*, 2015 WL 5475531, at *4.

Plaintiff's minimum wage damages are calculated by taking the difference between Plaintiff's actual hourly wages and the minimum wage, multiplied by the number of hours worked per week. Accepting her claims as true, the Court has determined that Plaintiff's actual hourly wages were $0.00 per hour. Plaintiff worked at Club Vanity for 19 weeks. (Mem. in Supp., ECF No. 13, at 17; *see also* Pl.'s Decl. in Supp., ECF No. 15, ¶¶ 1–2 (affirming that Plaintiff worked at Club Vanity from December 2019 to March 2020 and from June 2021 to July 10, 2021).) Throughout her employment, Plaintiff "typically worked 27 hours per week, but worked 25 hours per week once per month." (Mem. in Supp., ECF No. 13, at 17; *see also* Pl.'s Decl. in Supp., ECF No. 15, ¶ 5; Compl., ECF No. 1, ¶¶ 21–22.) Therefore, Plaintiff is entitled to 503 hours of minimum wage pay,[9] which should have been compensated at the rate of $15.00 per hour. Plaintiff is owed a total of $7,545 in compensatory damages for Club Vanity's willful violations of the FLSA and the NYLL.

Additionally, Plaintiff is entitled to compensatory damages for Club Vanity's unlawful retention of gratuities under the FLSA and the NYLL. *See* 29 U.S.C. § 203(m)(2)(B); NYLL § 196-d. According to Plaintiff, she, "on average, earned $1,200.00 in tips per week from working in private rooms." (Pl.'s Decl. in Supp., ECF No. 15, ¶ 9.) Plaintiff alleges that Club Vanity "retained half of the tips Plaintiff [] received while

---

[9] (27 hours x 14 weeks) + (25 hours x 5 weeks) = 378 hours + 125 hours = 503 hours.

working in Club Vanity's private rooms." (Compl., ECF No. 1, ¶ 25.) Therefore, the

Court finds that Club Vanity retained $600 per week from Plaintiff's tips. (*Id.*; *see also*

Mem. in Supp., ECF No. 13, at 18.) Accordingly, the Court finds that Plaintiff is entitled

to $11,400 in compensatory damages[10] for unlawfully retained gratuities in violation of

the FLSA and the NYLL.

Finally, Plaintiff is entitled to compensatory damages for Club Vanity's unlawful

deduction of house fees under the NYLL. *See* NYLL § 193. Plaintiff alleges that she was

required to pay Club Vanity $40 if she arrived at work at 7:00 p.m. or $70 if she arrived

at 9:00 p.m. on weekdays. (Compl., ECF No. 1, ¶ 27.) Plaintiff also alleges that she was

required to pay Club Vanity $55 if she arrived at work at 7:00 p.m. or $85 if she arrived

at 9:00 p.m. on weekends. (*Id.* ¶ 28.) Plaintiff worked on weekdays, except for three to

four times per month when she worked on weekends. (Pl.'s Decl. in Supp., ECF No. 15,

¶ 6.) Plaintiff usually came to work at 7:00 p.m., except for once per month when she

arrived at 9:00 p.m. (Compl., ECF No. 1, ¶ 21.) Based on this detailed account of her

work schedule, Plaintiff has adequately demonstrated that Club Vanity deducted $2,625

from Plaintiff in house fees[11] and that she is owed that amount in compensatory

damages.

---

[10] Plaintiff alleges that Club Vanity retained half of her weekly tips of $1,200, or $600 per week, over the course of the 19 weeks of her employment, which totals $11,400. ($600 x 19 = $11,400).

[11] Plaintiff requests that the Court award $2,625 in unlawful deductions, based on the following calculation. Plaintiff starts with a baseline house fee of $40, paid over a period of 19 weeks for 3 days per week, based on the allegation that she typically worked weekdays, starting at 7 p.m., when the house fee was $40. ($40 x 19 weeks x 3 days = $2,280.) (Mem. in Supp., ECF No. 13, at 18.) In addition, Plaintiff estimates that she arrived at work once per month at 9 p.m., and was required to pay $70 as the house fee those nights, or $30 more than the baseline house fee, charged to her at least four times. ($30 x 4 nights = $120.) (*Id.*) Finally, Plaintiff alleged that she worked on the weekend three or four times per month, when the house fee was $55. (*Id.*) She accordingly calculated an additional sum of $225 for those nights, by estimating that she was required to pay $15 extra over the $40 baseline house fee for 15 nights. ($15 x 15 nights =

Adding the owed minimum wages ($7,545), unlawfully deducted tips ($11,400), and unlawful deductions ($2,625) together, Plaintiff's total compensatory damages equal $21,570. Under the FLSA and the NYLL, an employee may also recover liquidated damages equal to the amount owed for unpaid minimum wage, unlawfully retained gratuities, and unlawful deductions. *See* 29 U.S.C. § 216(b); NYLL § 198(1-a); *Cabrera v. Canela*, 412 F. Supp. 3d 167, 184 (E.D.N.Y. 2019) (awarding Plaintiff liquidated damages equivalent to compensatory damages for unlawfully retained gratuities, among other things); *Pichardo*, 2012 WL 4173654, at *6 (awarding Plaintiff liquidated damages equivalent to compensatory damages for unlawful deductions). Plaintiff is therefore entitled to liquidated damages pursuant to the NYLL or the FLSA and may elect the higher amount. *See Charvac*, 2015 WL 5475531, at *4. Thus, Plaintiff should also be awarded $21,570 in liquidated damages under the NYLL for Club Vanity's violations.

## B. Statutory Damages

Next, Plaintiff claims she is entitled to recover under the statutory damages provisions of the NYLL for Defendants' repeated violations of New York State notice and pay stub requirements. *See generally* NYLL § 198(1-b); NYLL § 198(1-d).[12] Plaintiff

---

$225.) (*Id.*) Based on this analysis, the Court finds that Plaintiff has established her entitlement to the amount she requests, $2,625, to a reasonable certainty. ($2,280 + $120 + $225 = $2,625.) *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999) (finding that "when a default judgment is warranted based on a party's failure to defend," the court must "ascertain the amount of damages with reasonable certainty").

[12] NYLL § 198(1-b) states:

If any employee is not provided within ten business days of his or her first day of employment a notice as required by [§ 195(1)], he or she may recover in civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

In turn, NYLL § 198(1-d), provides:

worked three days per week. (Compl., ECF No. 1, ¶ 5.) Plaintiff has alleged that Club Vanity continually violated these requirements during the course of her 19 weeks of employment, during which Plaintiff worked for 57 days. (*See* Mem. in Supp., ECF No. 13, at 17.) Under NYLL § 198(1-b), an employee may recover $50 for each work day, up to $5,000. Because Plaintiff alleges that she worked 57 days (19 weeks x 3 days per week), she is entitled to $2,850 in damages for Defendants' wage notice violation. (57 days x $50/day = $2,850.) In turn, NYLL § 198(1-d) provides a penalty of $250 per day when a wage statement occurs and continues to occur, up to $5,000. Because Plaintiff worked more than 20 days, she is entitled the full $5,000 penalty. *See Pichardo*, 2012 WL 4173654, at *7. Accordingly, Plaintiff is entitled to $7,850 in statutory damages.

### C. Emotional Distress Damages

Plaintiff argues that "Club Vanity's negligent supervision of its bouncers [] caused Plaintiff to be assaulted and battered, which in turn has caused Plaintiff emotional distress including anxiety, stress, shame, embarrassment, and sadness." (Mem. in Supp., ECF No. 13, at 19.) Specifically, Plaintiff alleges that as a result of the bouncers' actions on August 7 and 8, 2021, which included stealing belongings from her bag, pushing her outside into the rain, and pulling out a bat and taser, Plaintiff "suffered and continue[s] to suffer emotional distress including anxiety, stress, shame, embarrassment, and sadness." (Pl.'s Decl. in Supp., ECF No. 15, ¶¶ 14–16.)

Based on this claim, Plaintiff requests "emotional distress damages totaling $25,000.00." (Mem. in Supp., ECF No. 13, at 19.) "As courts have frequently noted,

---

If any employee is not provided a statement or statements as required by [§ 195(3)], he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.

'there appears to be a 'spectrum' or 'continuum' of damage awards for emotional distress,' ranging from '$5,000 to more than $100,000, representing 'garden-variety,' 'significant' and 'egregious' emotional distress claims.'" *Setty v. Fitness*, No. 17-CV-06504 (NGG) (SMG), 2018 WL 8415414, at *16 (E.D.N.Y. Dec. 18, 2018), *report and recommendation adopted sub nom. Setty v. Synergy Fitness*, No. 17-CV-6504 (NGG) (SMG), 2019 WL 1292431 (E.D.N.Y. Mar. 21, 2019) (quoting *Rainone v. Potter*, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005) (citation omitted)). "This three-tiered approach has been used to calculate damages recoverable on a default judgment . . . ." *Id.* "Courts generally award damages for garden-variety emotional distress claims ranging from $5,000 to $35,000 'based upon the plaintiff's vague or conclusory testimony of distress.'" *Id.* at *17 (quoting *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 153–54 (E.D.N.Y. 2013)). Given that Plaintiff has alleged generalized "anxiety, stress, shame, embarrassment, and sadness," Plaintiff qualifies for "garden-variety damages" because she has not alleged specific symptoms or corroborating evidence to establish her emotional distress, but she has adequately established that her injuries here resulted in emotional distress. (*See* Pl.'s Decl. in Supp., ECF No. 15, ¶ 16.) *Cf. Joseph*, 970 F. Supp. 2d at 153–54 (awarding $30,000 where plaintiff claimed that she, among other things, became irritable and despondent, felt severe anxiety, suffered from depression, had trouble concentrating, suffered from nightmares, and withdrew from family and friends); *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG) (PK), 2018 WL 4292171, at *11 (E.D.N.Y. Aug. 3, 2018) (recommending award of $15,000 to African-American plaintiffs who were called racially offensive names and terminated based on their race, who testified that they felt "different," "bad," "degraded," "fearful," and "constantly stressed and anxious"). Having considered Plaintiff's well-pleaded allegations that give rise to her claim for emotional distress, her articulated injuries, and the range of damages typically awarded

for garden-variety emotional distress, the Court recommends awarding Plaintiff $25,000 in emotional distress damages.

### D.  Prejudgment Interest

"It is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages." *Begum v. Ariba Disc., Inc.,* No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1064 (2d Cir. 1988)). Because FLSA liquidated damages are meant to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to a position they would have been in absent the wage-protection violation. *See Fermin*, 93 F. Supp. 3d at 48; *see also Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583 (1942).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *See Begum,* 2015 WL 223780, at *3. This is because New York State views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Const., Inc.,* No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012), *report and recommendation adopted*, No. 11-CV-5788 (ARR), 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose").

The availability of both liquidated damages and prejudgment interest under the NYLL "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum,* 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.,* No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted*, No. 10-CV-4313 (NG), 2013

WL 2152176 (E.D.N.Y. May 17, 2013). However, plaintiffs may not recover prejudgment interest for wages compensated under the FLSA. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011). Here, since Plaintiff is entitled to an equivalent award of compensatory unpaid minimum wages under either the NYLL or the FLSA, the Court finds Plaintiff is entitled to prejudgment interest.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date. *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin*, 93 F. Supp. 3d at 49 (collecting cases); *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F. Supp. 3d at 49). Under this approach, interest is to be accrued at the simple rate, "from [the midpoint date] . . . through the date judgment is entered." *See Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013).

Here, given that Plaintiff was employed from December 2019 to March 2020 and from June 2021 to July 10, 2021, for 19 weeks, the midpoint of Plaintiff's employment with Club Vanity was February 13, 2020. Accordingly, the Court recommends that prejudgment interest be awarded on Plaintiff's unpaid minimum wages, gratuities, and deductions of $21,570 from February 13, 2020, to the date of this court's judgment at a per diem interest rate of $5.32 ($21,570 × 0.09 / 365).

### E. Post-Judgment Interest

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment

in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021). In *Fermin*, the court awarded the plaintiffs post-judgment interest on all sums awarded on their FLSA and NYLL wage-and-hours claims. *See Fermin*, 93 F. Supp. 3d at 53. The same approach is appropriate here. Therefore, the Court respectfully recommends that Club Vanity be ordered to pay Plaintiff post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C. § 1961(a).

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends finding that entry of default is warranted and that under the standards for a default judgment, Plaintiff has established that Club Vanity violated the FLSA and the NYLL.

Accordingly, the Court respectfully recommends that Plaintiff's motion be granted and that a default judgment be entered against Defendant Club Vanity. With respect to damages, the Court recommends that Plaintiff be awarded a sum of $75,990, comprised of the following: $21,570 in compensatory damages; $21,570 in liquidated damages; $7,850 in statutory damages; and $25,000 in emotional distress damages. The Court further recommends that prejudgment interest on Plaintiff's unpaid overtime wages and gratuities of $21,570 be awarded at a per diem interest rate of $5.32 from February 13, 2020, to the date of the judgment, and that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a). Finally, the Court recommends that

Plaintiff be awarded a fifteen-percent increase in damages under the NYLL (which total $50,990), not including post-judgment interest, for any amounts that are not paid within ninety days of the judgment or the expiration of time to appeal.[13]

The Court further recommends that the claims against John Does 1–3 be dismissed without prejudice since these individuals have not been identified or served.

\* \* \* \* \*

---

[13] New York Labor Law provides that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA) (SMG), 2018 WL 7252949, at \*12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, No. 16-CV-3922 (CBA) (SMG), 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at \*13 (E.D.N.Y. May 11, 2021), *report and recommendation adopted*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at \*7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).

This report and recommendation will be filed electronically and a copy sent by mail to Defendant Club Vanity. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Margo K. Brodie, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen **(14)** days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:  Brooklyn, New York
     July 29, 2022

*Taryn A. Merkl*

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE